## MARY LOVELL *vs.* WILLIAM BRIGGS *and another.*

If an administrator or guardian sell, under license, an estate, which belongs to their intestate or ward, and become the purchasers themselves, the sale is not for that cause void.

But, if the sale was unfaithful, or the price inadequate, they may be made to answer for the true value of the estate, when they render an account in the probate office, or by an action upon their bonds.

If they purchase such estate of an heir or ward, after the heir or ward become adult, and are otherwise competent to sell, the administrator or guardian are not liable, either in their accounts or upon their bonds, to answer for any inadequacy of price ; but, in such case, circumstances more slight will warrant a jury in the presumption, that there was actual fraud in the purchase.

The subsequent conduct of the administrator in respect to this and other estate of the intestate is competent evidence to show his intent in such a purchase.

THIS was an action of debt. The declaration contained three counts on three separate decrees of the court of probate in this county, against the defendant, *Briggs*, as administrator on the estate of *Timothy Lovell*. *Lewis R. Morris* was also named as a co-defendant and joint administrator ; but residing in the state of Vermont, no service of the writ had been made upon him.

The defendant, *Briggs*, pleaded *nil debet*, on which issue was joined, and a trial had here, May term, A. D. 1819.

The decrees, when offered in evidence, appeared to have been made against *Briggs* alone ; for which cause he contended, that *Morris* ought not to have been joined as a co-defendant, and, therefore, moved that the plaintiff be nonsuited. This was refused.

The three decrees amounted to something more than $20,000 ; and as the plaintiff was admitted to be the widow of said *Timothy Lovell*, who died intestate and without issue, she rested her case here as being entitled, under our statute of distribution, to one half the amount of the decrees.

The defendant then proved, that on the 31st of March, A. D. 1814, prior to these decrees, the plaintiff executed to him a deed of bargain and sale, and also a deed of release of all her interest of every description in the estate of her deceased husband.

To the admission of these deeds the plaintiff objected on two grounds. First, that every purchase of intestate property by the administrator of it, is, in law, void ; and secondly, that the deeds were in fact obtained by misrepresentation and fraud.

The first objection was overruled.

Under the second objection, much testimony was offered concerning the inadequacy of the consideration paid by the defendant to the plaintiff; concerning the truth of his representations, and, also, concerning his conduct in the course of the purchase.

The plaintiff offered to show, likewise, the conduct of *Briggs*, after the purchase, in relation to her interest and the interest of the other heirs in the intestate estate, as evidence of fraud; but the testimony, being deemed irrelevant, was rejected.

The jury found a verdict for the defendant; and it was received, subject to future consideration upon the questions raised in the progress of the cause.

*J. H. Hubbard* and *J. C. Chamberlain*, counsel for the plaintiff.

*Briggs, per se,* and *J. Smith.*

WOODBURY, J. The objection, which grows out of the joinder of the co-administrator in this case, is now waived by the defendant, *Briggs*; and, consequently, we shall offer no opinion upon the principles and authorities, that would govern it. 4 *John.* 26.—11 *ditto* 16.—1 *Salk.* 318.—7 *East* 246.—*Cr. Eliz.* 318.

The next objection relates to the validity of the purchase of intestate property by the administrator of it.

On the part of the plaintiff it is contended, that every such purchase is *per se* void. But this position is by no means tenable in a court of law; and, in our opinion, is somewhat broader than what would be sanctioned even in chancery.

That court possesses a peculiar guardianship over minors, wards, &c.; and from the relationship, which exists between an administrator and the heirs, will keep a most watchful eye upon his conduct. It justly considers this relationship as a ground of trust and confidence, that this confidence requires in return the best of faith, indefatigable diligence and an entire devotion to the interests of the heirs. The heirs are, in general, helpless females or minors; and when a suspicion arises, that this trust has been neglected or betrayed, a

scrutiny becomes proper.   Upon this scrutiny, if an injury appears to have been sustained by the heirs, in consequence of purchases by the administrator of intestate property, chancery considers the transaction a constructive fraud upon the heirs, and under that view of it is at liberty to pronounce the purchase void.   We believe this to be the extent of the doctrine; and under our system of jurisprudence it is important to mark well the distinction that exists between the two classes of cases, where the doctrine is applied.

The first class consists of purchases by administrators of the estate of their intestates, when sold by the administrators themselves under license.

In such a case, the heirs are altogether passive; the administrator alone acts, he is in fact the vendor, the agent, and the judge, to determine the time, place and terms most advantageous to those interested.(1)   In such case, therefore, the law considers it suspicious in a high degree for him to become a purchaser.   Because it is so difficult for any man, at the same time, to serve with honesty, two different masters, himself and the heirs; or to act in the same case as both judge and party, a judge as to their benefit, and a party for his own; or to be in the same transaction an agent on the one hand, and a principal on the other; or, in other words, to purchase of himself by being both vendor and vendee.   3 *Binney* 54.—4 *ditto* 43.—2 *John. Chancery* 260, *Davane vs. Fanning.*

The second class of cases is where the administrator purchases directly of the heirs to the intestate, when they are adult, and themselves execute the conveyance.

Many of the reasons before stated are here inapplicable; but still his situation is open to suspicion, on account of the confidence yet felt in him by the heirs, as the representative of their deceased benefactor, and the dispenser of his bounty, and on account of his superior information upon the condition and value of the estate.   Moreover, in this class of cases, the heirs, though competent in law to execute a conveyance, are often in needy circumstances, have heedless habits, or have recently been either femes covert or minors,

(1) 2 Madox 89.

and consequently are unacquainted with the nature of such trades, and with the value of such property.

But, under the circumstances of both these classes of cases, it must be obvious, that administrators may sometimes, in fact, make purchase with pure intentions and with no actual injury to the heirs. From their superior knowledge of the estate, they sometimes may pay more for it than strangers would ; and to consider all their purchases as absolutely void would occasionally injure rather than benefit the heirs. To hold them only voidable prevents every inconvenience and achieves every advantage ; and hence the rule in chancery is, that these purchases are never *per se* void, but merely voidable at the election of the heirs, provided, on inquiry, a greater price can be obtained for the estate. 1 *Madox* 94. —10 *Vez. In.* 393.—3 *ditto* 750.—13 *ditto* 51, 601.—9 *ditto* 234.—1 *Scho. & Lef.* 126.—1 *Cruise* 534.—13 *John.* 320. —5 *ditto* 42.

But in courts of common law, such purchases, unless tainted with actual fraud, are neither void nor voidable. " Courts " of law take notice of actual fraud, but these technical or " constructive frauds are of equity cognizance." 14 *John.* 412, 501, 513, *Jackson vs. Walsh.*—10 *John.* 462.—4 *Hen. & Mum.* 430.—2 *Dess.* 636.—*Just. Inst.* 643, *note.*

In a state like ours, where no court of chancery exists, this circumstance may seem to appear a misfortune. But on examination it will be found, that, under even our present system, the heirs can seldom suffer.

In the first class of purchases, made by the administrator under a licence, obtained by himself, he is bound, both by his administration bond and by the bond given, when he obtains the license, to sell the estate to the best advantage and faithfully to account for all the proceeds.(1)

(1) 1 N. H. Laws 216–7.

Should he be guilty of any mismanagement whatever in the sale, and become himself a purchaser at a low price, he would doubtless be liable on either of the bonds, and in some cases, also, on a return of his administration account. 14 *John.* 409.—9 *Mass. Rep.* 76.—*Currier vs. Whittier, post.*

Lovell
*vs.*
Briggs.

(1) 3 Binney
54.--4 ditto 43.

(2) Sugden's
Law of Ven-
dors 400.

(3) 1 N. H.
Rep. State vs.
Little. Haven
vs. Low, ante.

Again, in such cases, if there be actual fraud, the purchase may be altogether avoided ; and on that ground alone, are the decisions in Pennsylvania bottomed on any established principles.(1)

In the second class of purchases, as the confidential relation between the administrator and the heirs is dissolved ; as each party conducts *sui juris*, without any agency or trust from the other,(2) there is no remedy for an inadequacy in the price, unless the heirs as minors, femes covert, or lunaticks, were incapacitated to sell ; or, being of full capacity, were overreached by actual fraud.

But in such case, no evil of much consequence can escape redress, if the jury are directed, as they were in the present action, that any unfairness of representation and deportment on the part of the administrator, combined with much inadequacy of consideration, would furnish good grounds for a presumption of actual fraud. And that the suspicions of it would be still more violent, if the heir had recently arrived at age, was embarrassed, extravagant, ignorant, friendless, or a female, and if either concealment or haste characterized the negotiation.

This question of actual fraud, as that offence is " compounded of facts and intents," was a question for the jury under the direction of the court.(3) And, upon full consideration, we are satisfied with all those directions and opinions given in the progress of the trial, except the rejection of the testimony as to the defendant's conduct, after the purchase, in respect to the interest of the plaintiff and of the other heirs in the property of the intestate. That testimony was offered generally to prove fraud in this purchase ; and was rejected under an impression, that any thing, after the purchase, could not reasonably be supposed to have operated on the plaintiff to enter into the purchase itself.

But in another view of the testimony, we now think it relevant. It was one important step in the case to prove a fraudulent intent in the defendant ; and we can readily see, that his subsequent conduct concerning the whole estate

might throw much light upon the intent, which probably actuated him in becoming interested in any part of it.

It may be proper, too, that the inquiry should take a broader range than his conduct, *afterwards*, concerning this particular purchase and this particular heir; because, as contended for by the plaintiff, the whole intestate estate was probably managed with similar views; and the disposition of the whole would be likely, in some degree, to be made subservient or conformable to his views and interest in a part.

Thus it is established practice to admit evidence concerning different sales of a debtor's estate, made at or about the same time, to show a fraudulent intent in the debtor to injure his creditors.(1) So, where the charge was the procurement of goods by a fraudulent conspiracy, testimony was admitted of other transactions of the supposed conspirators, *soon after*, to prove a probable intent and combination to defraud in the first case.(2) So, to prove a knowledge, that a bill is forged, or that the payee is fictitious, it is competent to show circumstances connected with the passing of other bills by the same party. *2 Hen. Bl.* 288.—4 *Bos. & Pul.* 94–5.—1 *Phi. Ev.* 137. See, also, 1 *John.* 100, 103.—3 *Es. Ca.* 193.—2 *John. Ca.* 198.\*

For these reasons, the verdict must be set aside, and a
*New trial granted.*

*Lovell vs. Briggs.*

(1) Thrasher vs. Haines, Rock. Feb. 1822.

(2) 3 John. 237.