## TOWN OF NORTHWOOD *vs.* TOWN OF DURHAM.

The acts of May 2, 1719, and January 16, 1771, require, that the doings of select-
men et al. in warning out persons from a town, should be returned to the court
of quarter sessions within one year from the time such persons came to reside
in such town.

A town, exercising jurisdiction for more than twelve years over territory ultimate-
ly found to belong to another town, is liable for the support of persons then in-
habitants of such territory, in case they become unable to support themselves.

The warning of a person in conformity with statute, prevented the person warned
from gaining a settlement, and all those who derived their settlement from him.

THIS was assumpsit for the support of the children of *John Smith.*

At the trial here, September term, 1819, on the general issue, the facts in the declaration were all proved, except the settlement of the paupers in Durham.

It was agreed, that neither *John Smith* nor his children had any settlement of their own right, but depended for one upon *Samuel Smith,* the father of *John.*

As respects *Samuel,* the testimony seemed conclusive, that from about 1769 to 1777, he resided in Lee, and then moved to Durham, where he continued six or seven years, then removed to a place called the *Shed,* at that time supposed to be included within the bounds of the town of Lee, and over which that town exercised jurisdiction till 1798. Since that time, the line between Lee and Durham, being in dispute, has been so run as to leave this place within the bounds of Durham.

*Samuel Smith* resided at the *Shed* seven or eight years, and then removed to Durham, where he resided a few years, and then removed to another part of Lee ; but the time of this last removal being doubtful, the jury found specially, that it was not one year previous to January, 1796, the time of the repeal of the statute which gave a settlement by a year's residence.

It also appeared in evidence, that *Smith* was warned to depart from Lee. The warrant was issued in due form on the 24th of April, 1783, and served on the 26th of the same month, but not returned till the 29th of March, 1784. The constable of Lee, to whom the warrant was delivered for service, in stating the time of *Smith's* residence there, says, " And at the time of their being warned they had not been

" longer than five months in said Lee." And on the back of the warrant is as follows, " Samuel Smith and others, " warrant received March 29, 1784," but not signed by the clerk, or any other person.

It likewise appeared in evidence, that *Smith* was warned to depart from Durham, by warrant, dated June 20, 1789, and served the same month, and returned and put on file with legal formality, the 25th of the same month. The constable was therein directed to warn *Samuel Smith* and *family*, and in his return, he says, " I have warned the within " named persons to depart, &c. *Samuel Smith* says he " moved in about the middle September, 1788."

A verdict was taken by consent for the plaintiff, to stand or be set aside, and a non-suit entered, as the opinion of the court should be of the law arising on the foregoing facts.

GREEN, J., delivered the opinion of the court.

The residence of *Samuel Smith* in the town of Durham for six or seven years immediately succeeding the year 1777, gained him a settlement there, which still remains, unless lost by his removal to a place called the *Shed*, and residence there for six or seven years, without being warned as the statute required, which place of residence was then supposed to be in Lee, and over which Lee, at that time, and long afterwards, exercised jurisdiction, but which was ultimately ascertained to be within the limits of Durham.

Before considering the effect of this assumption of jurisdiction, it is proper to advert to the warning out by the town of Lee. If the requisites of the statute were fully complied with in that transaction, a decision on the question of liability in consequence of such exercise of jurisdiction would become unnecessary.

It is objected, on the part of Durham, that the proceedings on the warrant are defective in this particular; that it was not returned to the clerk's office of the court of sessions within one year after *Smith* came to reside in Lee.

The statute of May 2, 1719, is as follows: " That if any " person or persons come to sojourn or dwell in any town " within this province, or precinct thereof, and be there re-

" ceived and entertained by the space of three months, not " having been warned by the constable, or other person " whom the selectmen shall appoint for that end, to leave " the place, and the names of such persons, with the time " of their abode there, and when such warning was given " them, returned unto the court of quarter sessions, every " such person shall be reputed an inhabitant of such town," &c. &c.

The term of three months was afterwards, by statute of January 16, 1771, extended to one year.

It is contended on the part of Northwood, that the statute does not require the warrant to be returned within any certain period. If no particular time is by this statute intended for the return of the warning and the proceedings thereon, to the court of sessions, the object of this provision in the statute would be wholly defeated. The design of this part of the statute was, to afford information to those interested of their liabilities, and this information would not be obtained, if towns were permitted, at pleasure, to keep from public view proceedings of this nature ; but from a perusal of the statute, we are of opinion, that the time of return is therein expressly limited to one year from the time the pauper came to reside in the place from which he is thus warned to depart ; and as that part of the return of the constable of Lee, which relates to the time of *Smith's* abode there when warned, must necessarily mean that he had been in Lee nearly five months ; and taking it for granted, that the return was in fact made to the clerk's office at the time it purports from the minute on the back—still it must have been more than one year from the time his residence commenced in Lee to the time the warrant was returned and put on file, and this renders the whole proceeding of no effect.

The question is then presented, whether the town of Lee, after an exercise of jurisdiction for the length of time before named, ought now to be permitted to allege, that the place where *Samuel Smith* resided, was in fact in the town of Durham. It seems well settled, that when a person, unauthorized, undertakes to exercise the duties of an office, and is

(1) 3 Term.
Rep. 632,
Radford qui
tam vs. M'In-
tosh.—4 ditto
366, Berryman
& Wise.—6
ditto 663,
Cross vs.
Kaye.

sued by the person affected thereby, he is not permitted to allege that he was then unauthorized, and thereby excuse himself from his illegal acts.(1)  And in this case it seems equally reasonable that the town of Lee, who had the advantages of this extension of jurisdiction for many years, should not be excused from the liabilities incurred during that time, under the plea of mistake ; and more especially as such exercise of jurisdiction might, and probably did, in this case, alter the course of conduct on the part of Durham towards this family ; for it seems, from the evidence, that very soon after *Smith* moved from the *Shed* into the acknowledged limits of Durham, he was warned to depart from that town, and it is but reasonable to suppose, that the same diligence would have been used by them on *Smith's* first coming to the *Shed,* had not the conduct on the part of Lee divested them of all precaution.

From the best consideration we are able to give this part of the case, we are of opinion, that the settlement of *Samuel Smith* must be considered as in the town of Lee, unless lost by his removal from the *Shed* to a place within the known limits of Durham, and his subsequent residence there for several years.

The warrant, by which he was warned from Durham after his leaving the *Shed,* is dated June 20, 1789 ; and from the proceedings thereon it appears, that *Smith* must have moved from that place to Durham about the middle of September, 1788.  He was warned the 24th day of the same June above mentioned, and on the 28th of the same month, it was returned and put on file in due form.  The requirements of the statute as to the time of warning and return were therefore complied with.  But it is objected, that the warrant and return are too general, the constable being required to warn " *Samuel Smith* and *family,*" and his return being, " that he " had warned the within named persons."  But taking into view, that *John Smith,* from whom the paupers derive their settlement, was the son of *Samuel,* and had the settlement of his father, it was wholly unnecessary that the warning should extend to *John* ; and inasmuch as the father is nam-

ed in the warning and referred to in the return, we think the proceedings sufficient, the settlement of the paupers; is therefore in Lee, the verdict must consequently be set aside, and a non-suit entered. 3 *Mass. Rep.* 322, *Shirley vs. Watertown.*