## REMICK v. BUTTERFIELD.

Letters of administration are competent evidence of the due appointment of the administrator, where a title to real estate is set up under an administrator's deed.

A party cannot legally purchase, on his own account, that which his duty or trust requires him to sell on account of another, nor purchase on account of another, that which he sells on his own. He cannot unite the opposite characters of buyer and seller.

An administrator who, under a license from the court of probate, advertises the real estate of his intestate for sale at public auction, and at the sale becomes the highest bidder, cannot make a valid sale and conveyance of the property to a third person.

Each of the heirs of an intestate may avoid an illegal sale made by an administrator, as to his own share.

The probate court may amend, or permit to be amended, its own records and files, according to the facts; but such amendments will be binding only on parties duly notified and their privies.

The estate vested by law in an administrator of an insolvent estate to take the rents and profits, cannot be added to the estate of his grantee, under an invalid conveyance to make up the term required to support a claim for betterments.

THIS was a writ of entry to recover a parcel of land in Derry. The suit was commenced January 26, 1852. Plea, the general issue, with a claim for betterments.

Remick *v.* Butterfield.

It was admitted that Samuel Remick died, intestate, about December, 1837, lawfully seized of the demanded premises, and that his estate descended, in eight shares, to his heirs, of whom the demandant is one ; and she has also obtained deeds of all their rights, from six of the other heirs.

The tenant gave iu evidence, first, a letter of administration from the judge of probate for the county of Rockingham to George W. Pinkerton, dated July 15, 1845, and second, a deed of said real estate from said Pinkerton, as administrator, to the tenant, dated May 26, 1847.

It was admitted that said administrator, pursuant to a license for that purpose, gave notice for a sale at public auction on the said 26th day of May, and exposed the premises for sale on that day, according to the notice, but the same were bid off by the said administrator, (he being the highest bidder,) and were by him afterwards, on the same day, sold at private sale to the tenant, and a deed was thereupon executed to him, in the usual form of administrator's deeds.

The whole amount of the inventory was $200. The estate was administered in the insolvent course. The real estate was sold for $321, and that sum was accounted for in the probate court.

The demandant's counsel took the following exceptions :—

1. No decree of the judge of probate is shown, appointing George W. Pinkerton administrator.

2. The sale to the defendant was not pursuant to the license, not being at public auction, and was contrary to law.

3. It is not shown by competent evidence that the administrator took and subscribed the oath prescribed by law, the amendment thereof being inadmissible for want of power in the judge of probate to make it, and also for the want of due and proper exercise of that power by the judge of probate, if he had it.

The objection to the oath, as originally certified is, that it omits the words " So help me God," which close the form of the oath prescribed by statute. The certificate of the oath was filed August 4, 1847. This certificate was amended, by order of the judge of probate, on the 11th day of January, 1854, without any notice to the heirs, upon the affidavits of the administrator and of the magistrate that the oath was taken as the statute required.

A verdict was taken for the demandant, subject to the opinion of the superior court.

*Porter*, for the plaintiff.

I. The heirs are not concluded by a sale of real estate by an executor or administrator, unless every essential requisite of law, in regard to such sales, has been complied with. *Knox* v. *Jenks*, 7 Mass. Rep. 488 ; *Wellman* v. *Lawrence*, 15 Mass. Rep, 326 ; *Adams* v. *Morrison*, 4 N. H. Rep. 166 ; 1 Story's Eq. 189, 190.

II. It does not appear that George W. Pinkerton, the defendant's grantor, acting as administrator of the estate of Samuel Remick, deceased, was duly appointed to that office. No decree of the judge of probate is shown making the appointment. The letter of administration is not a decree of appointment. It can only issue in consequence of such a decree. It is no more a decree than an execution is a judgment, or than the commission of the commissioner of insolvency is a decree, that an estate be administered as insolvent. *Vide* Prob. Dir. 193, for form of such decree. An execution is not evidence of a judgment.

The deed under which this defendant claims is of the same nature as a sheriff's deed, which cannot be given in evidence without producing the judgment and execution. In both cases the party acts under a power conferred by law, and is, therefore, held to a strict compliance with the provisions of the law. 1 Phil. Ev. 408, note a, and the many authorities there cited. For proper forms of decrees

on applications for letters of administration, *vide* Prob. Dir. 68, 69, 72, 75. They all run in this wise: "Upon due consideration of the foregoing petition, [the petition for administration,] it is decreed that the prayer thereof be granted, and that letters of administration issue," &c. Now the decree, in such case, is obviously a distinct thing from the letter, though a necessary previous step to it. Next after the decree granting administration follows the administration bond, and then, and not till then, is issued the letter of administration.

An appeal lies to this court from a decree of the probate court granting letters of administration. Such appeals often happen. But an appeal from the letters of administration has not yet fallen under our notice. Now, in this very case, as there was no decree or order allowing letters of administration to issue, what is there for an appeal to take hold of? What is there to uphold the letters of administration?

III. The administrator is not shown to have been duly sworn previous to his selling under his license, the amended oath offered not being legal evidence. The oath purports to have been amended by the judge of probate, after it was put on file in the probate office, and it appears from its date to have been done while this action was pending in the court of common pleas. Now it is contended that the judge of probate had no rightful authority to make this amendment. Courts, sometimes, under certain limitations and restrictions, make amendments of their own records. *Chamberlaine* v. *Crane*, 4 N. H. Rep. 115. But no court ever *makes* an amendment of the records of another court, or of the returns or certificates of ministerial officers. These can only be made by those other courts or officers themselves, upon their own personal knowledge of facts, and upon their official responsibility.

After license granted, the judge of probate has no further power in the matter, saving perhaps the right to require the administrator to account for the proceeds of the sale. He-

cannot intermeddle with the proceedings of the administrator in the matter of sale, or in any form try the title thereby created. The administrator's oath makes a part of the title.

The oath, if improperly taken, it is clear cannot be amended after the sale. And it is contended that the form of oath subscribed by the administrator and certified by the magistrate, is conclusive evidence against any pretence that it was taken in a different form. It could not be more absurd to admit evidence that the deed, when delivered, contained words which, upon inspection, appear never to have been in it. The oath must be in writing, and be subscribed by the party taking it; hence it would seem to follow that any thing said upon the occasion, but not written and signed, is no more a part of the oath than a covenant talked about, but not inserted, would be a part of the deed.

But supposing the oath to be amendable, it is believed that the judge of probate has no power to amend it. It was not taken before him, nor in relation to any matter to be tried before him, and no way is seen whereby it can be brought under his jurisdiction. It is placed among his files for safe-keeping merely. The magistrate cannot amend it on his own mere motion, because he has made return of it to the probate files, and thereby lost the control of it. 4 Dana 264.

The court of common pleas, then, having sole jurisdiction to try the title, necessarily must have the sole right to try all that appertains to it, subject, of course, to the supervision of this court. *Gibson* v. *Bailey,* 9 N. H. Rep. 168; *Law* v. *Pettengill,* 12 N. H. Rep. 337.

The administrator is not entitled to have license to sell without notice being first given to the heirs. *French* v. *Hoit,* 6 N. H. Rep. 370. If this amendment prevails, the heirs may lose their inheritance by proceedings got up behind their backs, and carried on to the end without their knowledge. This furnishes an additional reason, if one were wanting, why the application to amend should be

made to the court of common pleas, when and where the action was pending, and where both parties were, and where objections might have been interposed, and terms obtained and intervening rights protected, and injury prevented to all concerned.

And waiving this question of right for a moment, it is further contended that the judge of probate has not exercised the power to amend, in a legal and proper manner. In the application for amendment, it is set forth that the magistrate before whom the administrator took the oath, before proceeding to act under the license, did not make a full and complete record thereof on the license. It is no part of the magistrate's duty to put the oath in writing; that may as well be done by one person as another, but the administrator must subscribe his name to it, whereby he adopts it for better or for worse, and makes it his record, and not the record of any other. The words of the oath thus written and subscribed are his words, uttered by him, and not the words or record of the magistrate.

Again, the petition to amend does not set forth the form of the oath actually taken, nor the form of the oath indorsed on the license, nor wherein the one differs from the other. It does not allege even that the words " So help me God," were included in the oath as taken ; it only prays that they may be inserted, and for a reason aside from the fact that they belonged to the oath as taken. All that is sworn to by the administrator and the justice may be true, and yet those words, necessary to the validity of the oath, may never have been repeated in the taking or administration of it, (their affidavits merely verifying the allegations of the petition to amend.)

If it should be contended that the judge of probate intended nothing but simply to send back the oath to the magistrate for him to amend, then, it is replied, that the work of amending is only half done. No evidence appears in the case, and no pretence is made that any proceedings were

ever subsequently had before the magistrate relating to the amendment. The papers produced here, containing the amendment, bear no mark or sign, official or unofficial, showing that the magistrate has taken any part or lot in the matter subsequent to the action of the judge of probate.

IV. The sale to this defendant was made by the administrator, acting as such, at private sale, and not at public auction. The case is made no better for the defendant by the fact that the premises were exposed to sale at public auction, and bid off by the administrator, and afterwards sold by him at private sale to the defendant. The administrator could not be the seller and purchaser at his own auction, acting on the one hand for the heirs and creditors, and on the other for himself. *Currier* v. *Green,* 2 N. H. Rep. 225 ; 1 Story's Eq. 311, § 315; *Towle* v. *Leavitt,* 3 Foster's Rep. 360. In the case of *Currier* v. *Green,* wherein it was held that the administrator was chargeable with the full value of the property sold, *Richardson,* C. J., in delivering the opinion of the court, was careful to remark that " we do not mean to say that the conveyance cannot be avoided in such cases." The case of *Lovell* v. *Briggs,* 2 N. H. Rep. 118, is easily distinguished from the case at bar. The point here made could not properly be raised in that case. This was the case of a sale by a widow of the intestate of all her right and interest in the estate directly to the administrator ;—any remarks found in the court's opinion, as delivered in that case, not bearing directly upon the question in issue, certainly cannot be held as authority in other dissimilar cases ; and it is not deemed too much respectfully to suggest that the remarks above quoted of *Richardson,* C.J., were probably intended, in some sort, to prevent erroneous impressions from being derived from the *obiter dicta,* somewhat abounding in *Lovell* v. *Briggs.*

It is not easy to see why a sale, made as this sale was, should not be held void *per se.* Comp. Stat. 418, § 9. " Every such sale shall be made at public auction, and the

administrator so authorized and sworn, and having so advertised and sold, may execute a valid conveyance to the purchaser being the highest bidder." The statute is imperative, and leaves nothing to the choice or convenience or interest of the administrator. If he complies with the provisions of the statute, he transmits a title; if he fails, it is submitted, he confers no title. 4 N. H. Rep. 166, before referred to.

But it is quite sufficient for our present purpose, if the sale in question is not absolutely void, but only voidable at the election of the heirs individually. *Pierce* v. *Benjamin*, 14 Pick. 352; *Jennison* v. *Hapgood*, 7 Pick. 1; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Harrington* v. *Brown*, 5 Pick. 519.

On this point of our case the question is not whether any actual fraud was intermingled with the sale, but what is the rule of law applicable to all such cases. Would it be quite safe for heirs and creditors, if all sales by administrators may lawfully be made in the manner this sale was? Would it not be multiplying as well as legalizing the facilities and opportunities for the perpetration of fraud, to allow this sale to stand? Is it not to be feared that very many consciences would prove too feeble to resist temptations to do wrong, thus sanctioned and thrown in their way?

V. The defendant is not entitled to any allowance for betterments. He entered under a deed dated May 26, 1847. This suit was commenced January 26th, 1852, less than six years intervening between the making of the deed and the commencement of this action. Comp. Stat. 491.

*G. C. Bartlett*, for the tenant.

I. The letter of administration was the proper evidence of the appointment of George W. Pinkerton administrator of the estate of Samuel Remick. 1 Greenl. Ev. 519; 2 Greenl. Ev. 393; *Farnsworth* v. *Briggs*, 6 N. H. Rep. 562.

II. The amendment of the certificate of the oath upon

the license for the sale of the real estate, and that court having, in the exercise of its discretion, permitted the amendment to be made, it now stands as though the certificate had properly been made in the first instance. Every court has the custody and control of its own records and files, and when such court, in the exercise of its discretion, permits its records to be amended in a proper manner, this court will not interfere. In this case, the court of probate granted leave to the magistrate to amend said certificate, and it was amended accordingly.

III. It is admitted that due notice of the time and place of sale was given, and that at said time and place the demanded premises were exposed to sale at public auction, and were bid off by said Pinkerton, he being the highest bidder; but the bid was for the benefit of the estate of said Remick, and was made by the administrator for the tenant, who, on the same day, paid the sum for which the same was bid off, and the administrator has accounted for the same sum in the court of probate.

This action is brought at common law, and it has been settled in this State that at common law, purchases of estates of their intestates, by administrators, when sold by themselves under license, are not void or voidable, unless tainted with actual fraud. *Lovell* v. *Briggs*, 2 N. H. Rep. 221, and cases there cited.

It is not pretended by the demandant that there was actual fraud in this case. Now this being so, the question of fraud should have been submitted to the jury to determine. See cases above cited.

If the heirs wished to avoid the sale, they ought to have made their claim upon the equity side of the court, and then substantial justice could have been done to all parties.

IV. In regard to the claim for betterments, 1. This estate was administered in the insolvent course, and the administrator, by statute, is entitled to the rents and profits. Comp. Stat., ch. 168, § 10. 2. The administrator of an estate

administered in the insolvent course, may bring any real action in regard to the estate of said deceased. Comp. Stat., ch. 170, § 19.

We contend that the intent and meaning of the above statutes are to give to the administrators of estates, when administered in the insolvent course, the same possessory title to real estate as they before had to personal, and that their said title relates back to the death of the deceased, and consequently the tenant claiming under the title of Samuel Remick, through the administrator of his estate, has, in connection with those under whom he claims, been in the possession of the demanded premises for more than six years, and therefore the claim for betterments should be allowed.

*Porter*, in reply.

The defendant alleges that the letters of administration are the proper evidence of the appointment of the administrator. We answer, they are not conclusive evidence of any such thing. Their character and effect, as evidence, depends upon the manner and circumstances under which they happen to be issued. The question which is made in this case is not what the letters of administration may be competent to prove, if duly and properly issued, but whether, in this case, they were granted in such a manner as to be evidence at all.

Now it is necessary to the validity of such letters, when issued to a person not entitled thereto as a matter of course, that it should appear that there was an application therefor, setting forth legal grounds for granting the same to the applicant, a day of hearing and notice to all concerned, a hearing of parties, and judgment or decree in favor of the application; all which, it is contended, it is necessary for the defendant ot make out affirmatively, when called upon, without waiting for negative proof from the other side. The same reasons exist for such requirement, in this case, as prevail in cases of contested title to land sold for taxes. *Pike* v. *Han-*

*son,* 9 N. H. Rep. 491; *Blosson* v. *Cannon,* 14 Mass. Rep. 177.

The plaintiff has never acceded to the regularity of the proceedings whereby this administrator was appointed, but, on the contrary, embraced the earliest opportunity given her to call the same in question.

It is believed to be the general practice in these cases, to pass a decree, such as we complain is wanting in this case, and it is insisted the law requires such a practice to be universal.

We know that it has sometimes been said that the letters in these cases are a copy, or in the nature of a copy, of the decree permitting them to issue. They do not, on their face, purport to be a copy, and are never certified as a copy; and it seems preposterous to say that a decree of the probate court ordering letters of administration to issue, and the letters, when issued, are both one and the same thing. It therefore follows that the letters cannot be proof of the existence of the decree.

In regard to the sale of the premises in question, by the administrator, the defendant says that the administrator's " bid was for the benefit of the estate, and was made by him for the tenant." As to this assertion, it would be well enough to answer, that *the case furnished no such statement of facts,* and that nothing of the kind was attempted to be proved on the trial. Nevertheless, the statement may well justify, if it does not call for further remark.

If it is meant to be understood that the administrator acted as a by-bidder, then the sale was unlawful and void. *Towle* v. *Leavitt,* 3 Foster's Rep. 360. If it is meant to be understood that the bid was made pursuant to a previous private agreement or understanding between the administrator and the defendant, then the features of the transaction assume a still more forbidding aspect. On this latter hypothesis, it would be quite difficult, if not impossible, for the administrator to escape the imputation of actual fraud and collusion.

Remick *v.* Butterfield.

The defendant says he paid for the premises the same sum for which the administrator bid them off. The case furnishes no statement of the kind, and no proof of that fact was offered on the trial.

The defendant denies all actual fraud, and we answer, it is immaterial, on the facts admitted, whether there was or not that forbidden and odious ingredient mingled in the sale.

If the premises were bid in by the administrator, for the benefit of the estate, which is the most favorable interpretation of the transaction for him, in a moral view, then there was no sale in fact at auction, and a new auction would become necessary; and the case shows that the sale to the defendant was not at auction, but at private sale.

The defendant says it was settled in the case of *Lovell* v. *Briggs*, 2 N. H. Rep. 221, that a sale by an administrator of the estate of an intestate to himself, cannot be avoided at the election of the heirs, in a court of common law, without showing actual fraud. We deny that any such decision was made in that case. The question decided was entirely different from the one supposed, as we have before insisted, and what we have said as to the *obiter dicta* in that case need not be repeated.

It seems to be singular doctrine that sales of real estate, made by order of law, may be adjudged void in a court of equity, which must, perforce, be held valid in a court of law, the reasons for avoiding them being identical in both courts, as though the two courts were not governed by the same rules respecting the title to real estate. No such invidious distinction is alluded to in the subsequent case of *Currier* v. *Green*, 2 N. H. Rep. 225, where the rule is broadly, and without qualification or limitation, laid down, as founded on principles of public convenience, that " the moment any individual becomes the agent of another in the sale of an estate, he at once becomes incapacitated to make a contract which shall give him an interest in the purchase;" and such also is the doctrine in Story on Agency 11. Be-

sides, it is a maxim in equity, that where a rule of the common or statute law is direct, and governs the case, a court of equity is as much bound by it as a court of common law. 1 Story's Eq. 71, 72.

The idea that an administrator, or any body else, can derive title from himself to himself to another's property, by a bargain with himself, seems undeserving of serious refutation. The common, though homely adage, that it takes two to make a bargain, is as expressive and as directly in point as the more classic language of Blackstone and Chitty upon the same subject. 2 Black. Com. 242 ; Chitt. Con. 7.

The Compiled Statutes 418, furnish the rule of law for the guidance of administrators in such sales, requiring them to be at public auction, and intending, we say, by necessary implication, a sale to some other than the administrator himself.

In the case *Pierce* v. *Benjamin*, 14 Pick. 356, which was an action at common law, it was held that the sale of goods by a collector, for the non-payment of taxes, the collector himself being the purchaser, was voidable at the election of the owner of the goods.

The plaintiff seeks to recover possession of her estate, wrongfully, as she says, withheld from her. This object she could not effect, however valid her title, by a bill in a court of equity. Cooper's Eq. 224, 225; 3 Hoff. Prac. 162.

On the subject of betterments, it is believed that the defendant's doctrine is as erroneous as it is new. The administrator of an estate settled as insolvent, is doubtless entitled to the rents and profits of the real estate, while he is administrator, but he cannot go back for them behind the time when he became administrator. It is sometimes said that title may relate back, but this is never said of possession without title. Possession, actual is meant, is a matter of fact, and not of pretence. The administrator acquires no title *ex officio* to the real estate of the intestate. *Drinkwater* v. *Drinkwater*, 4 Mass. Rep. 358; *Gibson* v. *Farley*, 16

Mass. Rep. 280. Upon the death of the ancestor, the title to his real estate vests immediately in his heirs, subject to be diverted by a sale, by the administrator, made according to law. The right given to the administrator to take the rents and profits works no change in the title of the heirs, considered simply as a title.

To be entitled to betterments, the defendant, and those under whom he claims, must have been in actual peaceable possession, under a supposed legal title, &c. The defendant holds nothing under the heirs; his claim is adverse to them. Now supposing, which we do not admit, that the administrator had actual possession, under a supposed legal title, from the date of his letters of administration until the sale to the defendant, he will still come short in the matter of time. The administrator came into office July 15, 1846, and this suit was commenced January 26, 1852, being less than six years subsequent to the grant of administration. Besides, it is not shown that the heirs ever were in actual possession, and the seizin of the intestate, if actual, might have been for a day or a week only before his death, so the proof of the six years' actual possession, contemplated by the statute, seems to be wholly absent.

BELL, J. The positions of the plaintiff, that the letter of administration to G. W. Pinkerton is not sufficient evidence of his appointment as administrator, and that the decree of the judge of probate making the appointment, is the only proper evidence of that fact, has been argued with much ingenuity and plausibility. But the question is not new, and it has been settled by many decisions of the courts in England and in this country, which we do not feel ourselves called upon to disturb.

The result of these decisions is well stated in the 339th section of 1 Greenleaf's Evidence, cited by the defendant. "The proof of the plaintiff's representative character is made by producing the probate of the will, or the letters of

administration, which, *prima facie*, are sufficient evidence for the plaintiff, both of the death of the testator, or intestate, and of his own right to sue. The probate itself &ast; &ast; &ast; is conclusive evidence both of his appointment and of the contents of the will. The same principle governs in the case of an administrator;" and it is said in 2 Greenleaf's Evidence 519, " Letters of administration are granted under the seal of the court, having jurisdiction of the probate of wills, and the general course in this country, as in the case of wills, is to pass a formal decree to that effect, which is entered in the book of records of the court. The letter of administration is rather in the nature of an exemplification of this record, and as such it is received without further proof; but where no formal record is drawn up, the book of acts, or the original minutes, or memorial of the appointment, or a copy of them, duly authenticated, is competent evidence."

The same rule is laid down in many of the elementary books, as well settled law. 2 Phill. Ev. 173, and 2 Cow. & Hill's note 60, 61, 347; 3 Phill. Ev. 361; 2 Steph. N. P. 1904; Bull. N. P. 246; 1 Saund. Pl. and Ev. 514, 579; 2 Leigh's N. P. 1002; 2 Stark. Ev. 547, 516, 550; Peak. Ev. 69, 343; Cov. Con. Ev. 209; and see *Kempton* v. *Cross*, Rep. t. Hard. 100. In *Farnsworth* v. *Briggs*, 6 N. H. Rep. 561, and *Jeffers* v. *Radcliff*, 10 N. H. Rep. 242, this doctrine is distinctly recognized by this court.

Letters testamentary and letters of administration may, perhaps, be regarded as in the nature of the commissions issued to civil and military officers, which seem to be always regarded as competent evidence that the appointments have been duly made according to the provisions of the constitution, or of the laws. *State* v. *Leonard*, 6 N. H. Rep. 438; *State* v. *Wilson*, 7 N. H. Rep. 543.

Such commissions constitute an exception to the ordinary rule, that the best evidence must be produced, since

they presuppose and depend on an appointment as much as an execution does upon a judgment.

The record of the probate court shows that Pinkerton, the administrator, took the oath required by law before acting upon his license to sell. The records of the courts of probate, upon all matters within their jurisdiction and required to be recorded, are evidence of the matters to which they relate, as is the case in other courts of record. The order of that court, permitting an amendment of the record of the oath, is conclusive upon parties and privies, and will not be inquired into collaterally, if they had jurisdiction to make it. Where a court duly authorized has exercised a discretion given by the law, the propriety of its exercise will not be inquired into by a superior court. *Claggett* v. *Simes,* 5 Foster's Rep. 402.

We take it to be a sound principle, that every court exercising a continuing jurisdiction, having an office for the preservation of its records, and the charge of those records by a proper officer, has by law an implied authority to amend its records, to make them conform to the facts and truth of the case. *Dudley* v. *Butler,* 10 N. H. Rep. 284; *Willard* v. *Harvey,* 4 Foster's Rep. 344.

Assuming, then, the general power of the courts, upon a proper application and due proof, to correct their records, the question arises, who are bound by such amendments? Ordinarily, they affect the parties only to the proceedings; but in some cases, in the first instance, and in others subsequently, such amendments affect the rights and interests of many third persons. Are such persons bound by amendments of which they have no notice? We are of opinion that they are not bound, nor in any wise affected by amendments made behind their backs, but as to them the records are to be regarded as remaining in their original state. In the case of judgments rendered by courts, in cases where they have jurisdiction, the judgment is conclusive only against the parties to the proceeding, and those who are

deemed in law their privies, and, with few exceptions, they are not conclusive nor binding upon strangers. *Thrasher* v. *Haines,* 2 N. H. Rep. 244; *Dame* v. *Wingate,* 12 N. H. Rep. 291; *King* v. *Chase,* 15 N. H. Rep. 9; *Chamberlain* v. *Carlisle,* 6 Foster's Rep. 540; *Demeritt* v. *Lyford,* 7 Foster's Rep. 541.

And it does not seem to us consistent with sound principles to give to the discretionary orders of the courts any more extensive effect than the law gives to their judgments· See *Claggett* v. *Simes,* 5 Foster's Rep. 411.

As a general rule, we think that every application for an amendment should show who are the parties having rights which may be affected by it, and due notice of the proceeding should be given them. Probably such notice as is required by law in the settlement of estates in the probate court would be sufficient, the proceedings being, like them, in the nature of proceedings *in rem.* But if notice is entirely omitted, or is given to a part only of those whose rights may be affected, the amendment will be made at the risk of being held ineffectual, and as if not made, as to those interested who had no notice.

In the present case, the amendment was without notice to the heirs, whose interests might be vitally affected by it, and who should have had an opportunity to show that the original record was true, and that it would be made false by the amendment proposed. As to them the amendment is inoperative, and the record still stands in its original form, and the proof of the oath was therefore open to objection.

It is further objected, that the sale by the administrator was made at private sale, and not at auction, as the statute requires, and his deed is therefore ineffectual to convey the estate. By the case it is stated that the administrator being duly licensed to sell this real estate, gave proper notice for a sale at public auction, on the 26th of May, 1847, and at that time exposed the premises for sale; but the same were bid off by the administrator, (he being the highest bid-

Remick *v.* Butterfield.

der.)    Afterwards, on the same day, the administrator sold the premises at private sale to the tenant, and made him a deed in due form, as administrator.

Upon these facts, it is contended for the plaintiff that there was no sale at the auction, the property being *bid in* by the administrator; while it is insisted for the tenant, that the bidding of the administrator was merely for the benefit of the estate, that his bid was assumed by the tenant, and the deed made to him, as the highest bidder.

It is not asserted that there was any actual fraud in this case, but it may be fairly inferred that the administrator overbid the purchaser in the hope of getting a higher bid, and then persuaded him to take it off his hands.   All which might happen without any fraudulent purpose toward the estate.   But we regard the whole transaction as dangerous and improper and as illegal, giving no right to the administrator to hold the property, or to claim any conveyance under his bid.

To say nothing of the difficulty of an administrator's making an effectual conveyance to himself, the transaction may be regarded either as if the bid had been made by the agent of the administrator, the deed made to the agent and by him to the tenant, or as if made by the administrator on his own account, and a sale by him of the property to the tenant at private sale, or as if made by the administrator as the agent of the purchaser, and a conveyance made by the administrator to the principal for whom he has acted.   The evidence furnishes little support for either the first or third of these views, but either is more favorable for the tenant than the second, and if neither of them can be sustained, it would be hopeless to contend for the other.

Upon the first view, it is urged by the tenant that this action is brought at common law; and that it is settled in this State that at common law purchases of estates of their intestates, by administrators, when sold by themselves under license, are not void or voidable, unless tainted with actual

fraud; and for this position the case of *Lovell* v. *Briggs*, 2 N. H. Rep. 221, is cited, and it must be admitted that the language of the judge who delivered the opinion of the court in that case fully sustains that position.

But it is contended by the learned counsel for the plaintiff that the language there used is a mere *obiter dictum*, that the law is clearly otherwise, and has been so held in more recently considered cases. The first of these positions is shown to be correct by an examination of the case. The case related to the validity of the sale by a widow of her share of an intestate estate to the administrator. It had no relation to the sale of the real estate of an intestate, under a license by an administrator to himself, directly or indirectly, as the highest bidder. The statements of the law on the subject before us are without authority, and upon a careful examination of the authorities, we think them unsupported. The books cited by the counsel seem to us to sustain the position taken by him, that the administrator could not be the seller and purchaser at his own auction. The authorities which sustain this position are numerous. In equity they are uniform, as, indeed, seems admitted in *Lovell* v. *Briggs*. To the cases there cited may be added many others. See 1 U. S. Eq. Dig. 623; Trusts IV, 6, 274; 1 Ch. Eq. Dig. Fraud VII.

The rule, as we apprehend, is well laid down in this way. "A party cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own. He cannot unite the opposite characters of buyer and seller." See 4 U. S. Dig. Tit. Ex. and Ad. V, 206, 259, 304, 306, 317, 361.

In *Perkins* v. *Thompson*, 3 N. H. Rep. 144, the principle involved in this case came in question in the case of a deputy sheriff selling goods on execution; and the court held that the characters of seller and buyer of the same article at the same time are inconsistent, and cannot be united in the

same person.   He who acts as agent to sell  cannot be him-self the buyer, and  a deputy sheriff who purchased, by the aid of a friend, goods taken on execution and sold by him, was held liable for them in trover.   In this case, Chief Jus-tice *Richardson* cites the case of  *Currier* v.  *Green*, 2 N. H. Rep. 225, as an authority that he who acts as an agent to sell real estate, cannot be interested in the purchase of the estate he sells.   And in the case of *Brackett* v.  *Tillotson*, 4 N. H. Rep. 208, it was  held that purchases made by an adminis-trator at his own sale, in the name of others and in his own, were illegal ;  and *Currier* v.  *Green*, and *Perkins* v.  *Thomp-son*, were cited for the reasons of the decision.

The law is correctly and clearly laid down, as we think, in *Litchfield* v.  *Cudworth*, 15 Pick. 23, a real action, by Judge *Morton.*   " It is," he says, " a salutary and sound principle, that agents to sell cannot be purchasers.   That the characters of seller and buyer are so entirely incompati-ble that they can never be united in the same person.   And generally, that trustees of every description who have power to sell, can never, by direct or indirect means, become pur-chasers of the trust property.   *Copeland* v. *Mercantile Ins. Co.*, 6 Pick. 204 ;  *Church* v. *Marine Ins. Co.*, 1 Mason 341 ; *Barker* v.  *Same*, 2 Mason 369 ;  Paley on Ag. 32 ;  *Ex parte James*, 8 Ves. 337 ;  *Ex parte Kennett*, 10 Ves. 381 ;  *Society* v.  *Clapp*, 18 Barb. 47.

But these principles do not render the sale absolutely void. Strangers to  the property cannot call it in question.   It is voidable.   It is an abuse of authority which  may be taken advantage of by any one whose interest is affected.   Hence *cestui que trusts*, and all for whom the trustee or agent act-ed, have an option to avoid the sale and retain the  property sold, or to  confirm the sale and receive the consideration, as may be for their interest.   *Jennison* v.  *Hapgood*, 7  Pick. 1 ; *S. C.* 10 Pick. 77.   The heirs or their assignees have an election to avoid or confirm the sale, and in doing this they·

are not bound to act jointly.    Each  one  has an  individual election.

In *Blood* v. *Hayman*, 13 Met. 231, these principles are recognized as the well known rule in the case of an administrator.

The sale, then, to the administrator or his agent, was invalid and voidable, in the instance of the heirs, if it had been carried into effect by a conveyance.    It would be equally invalid if it had been made to the administrator, as the agent of the purchaser; since we regard it as settled that a person who is incapacited from purchasing on his own account, cannot, under any circumstances, buy as the agent of a third person.    *Hawley* v. *Cramer*, 4 Cow. 717, per *Walworth*, Cir. Judge.    *Ex parte Bennett*, 10 Ves. jr. 381.    So that, viewed in any light, the sale to Pinkerton was defeasible by the heirs, at their election.    It may, however, be noticed that there is here no evidence that Pinkerton was the agent of the tenant at the sale.    The sale was merely abortive, ending in nothing; but the property, being bid in by the administrator, remained a part of the estate, as if nothing had been done, the conveyance being made under circumstances in which the administrator had no power effectually to convey the estate, was unavailing to transfer the interest of the heirs, if they object; under some circumstances it might convey a limited interest given by law to the administrator. See *Bergen* v. *McFarland*, 6 Foster's Rep. 533.    But there are no facts here showing the existence of any such qualified estate in this case.

There can be no valid claim for betterments in consequence of the want of six years possession between the deed to the tenant and the commencement of this action.    This interval was less than five years, and, consequently, insufficient, unless the tenant can connect his defeasible estate under his deed, with the estate of the administrator under the law, continuing until the settlement of the estate.

But there is no pretence that an administrator, holding

the estate as a trustee for the creditors, has such a supposed legal title as would authorize him to claim for betterments. He has a legal title of a qualified character, that is, to take the profits for the use of the estate; but if the estate continued unsettled for ever so many years, the administrator could claim nothing for expenditures upon the property, excepting for necessary repairs, which he would be entitled to be allowed on settlement of his administration account in the probate court, and not elsewhere. The tenant, then, can derive no aid from the estate of the administrator, and, consequently, has failed in supporting a claim for betterments.

*Judgment on the verdict.*